UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

JAY WINEGARD, on behalf of himself and
all others similarly situated,

                        Plaintiff,

            -V-

NEWSDAY LLC d/b/a NEWSDAY,

                        Defendant.

Case No.: 1:19-cv-04420-EK-RER

------------------------------------------------------------------------X

# **DEFENDANT NEWSDAY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

JACKSON LEWIS P.C.
44 S. Broadway, 14th Floor
White Plains, NY  10601
Tel: (914) 872-8060
Fax: (914) 946-1216

Michelle E. Phillips
Joseph J. DiPalma

*Attorneys for Defendant*

**Served February 28, 2020**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTUAL ALLEGATIONS ................................................................................2

ARGUMENT ..................................................................................................................................3

    STANDARD OF REVIEW ON RULE 12(b)(1) & (6) MOTION TO DISMISS ....................3

    POINT I    PLAINTIFF LACKS STANDING AND THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE HE CANNOT DEMONSTRATE HARM ..................................................................................................................5

    POINT II    NEWSDAY IS NOT A PUBLIC ACCOMMODATION COVERED BY TITLE III OF THE ADA ...........................................................................................6

    POINT III    PLAINTIFF'S ALLEGED INABILITY TO VIEW TWO VIDEOS ON NEWSDAY'S WEBSITE IS NOT A BARRIER COVERED BY THE ADA ..................................................................................................................10

    POINT IV    TO THE EXTENT THE COMPLAINT ALLEGES A TITLE III VIOLATION BASED ON FAILURE TO PROVIDE AUXILIARY AIDS AND SERVICES, PLAINTIFF NEVER MADE A REQUEST FOR SUCH SERVICES ............................................................................................................10

    POINT V    THE NEW YORK STATE HUMAN RIGHTS LAW CLAIM AND THE NEW YORK STATE CIVIL RIGHTS LAW CLAIM SHOULD BE DISMISSED ..............................................................................................................13

    POINT VI    THE NEW YORK CITY HUMAN RIGHTS LAW CLAIM SHOULD BE DISMISSED ..............................................................................................................15

CONCLUSION ............................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrews v. Blick Art Materials LLC*, 268 F. Supp. 3d 381 (E.D.N.Y 2017) ........................... 14, 15

*Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013) ........................................................ 11

*Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 665 (2d Cir. 2005) ............................. 4, 5

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) ............................................................... 4, 5

*Burkhart v. Washington Metropolitan Area Transit Authority*, 324 U.S. App. D.C. 241, 112 F.3d 1207 (D.C. Ct. App. 1997) ........................................................................ 12

*Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008) ........................................................... 7

*Carter v. Healthport Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .................................................... 4

*de la Rosa v. 597 Broadway Development Corp.*, 2015 WL 7351540 (S.D.N.Y. Aug. 4, 2015) ............................................................................................................................. 13

*Feltzin v. Triangle Props., #1, LLC*, 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y. Dec. 15, 2016) .............................................................................................................................. 6

*Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340 (E.D.N.Y. 1998) ........................................... 13

*Godbey v. Iredell Mem'l Hosp., Inc.*, No. 5:12-cv-00004-RLV-DSC, 2013 U.S. Dist. LEXIS 117129 (W.D.N.C. Aug. 19, 2013) ......................................................... 11

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181 (2d Cir. 2006) .............................................. 13

*Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889(JFB)(AKT), 2016 U.S. Dist. LEXIS 98076 (E.D.N.Y. July 27, 2016) ................................................................................. 4

*Groshek v. Great Lakes Higher Education Corp.*, No. 16-3711 (7th Cir. Aug. 1, 2017) .............................................................................................................................................. 6

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) ...................................................... 2

*Loeffler v. Staten Island University Hosp.*, 582 F.3d 268 ......................................................... 15

*Rodriquez v. Fed. Bureau of Prisons*, 2012. U.S. Dist. LEXIS 185412 (N.D.N.Y. Nov. 30, 2012) .............................................................................................................................. 3

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ......................................................................... 5, 6

*Tauscher v. Phoenix Bd. of Realtors, Inc.*, No. CV-15-00125-PHX-SPL, 2017
 U.S. Dist. LEXIS 161940 (D. Ariz. Sept. 29, 2017) .................................................................. 11

*United States v. Harcourt Brace Legal & Prof'l Publ'n, Inc.*, No. 94CV3295,
 1994 U.S. Dist. LEXIS 22007 (N.D. Ill. June 23, 1994) ........................................................ 11

Defendant, Newsday LLC /d/b/a Newsday ("Newsday" and/or "Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), moves this Court to dismiss the Complaint with prejudice, and as grounds states as follows:

## PRELIMINARY STATEMENT

Newsday is a company which publishes a daily newspaper and operates a website. Newsday does not now operate, and never has operated, a place of public accommodation open to the public through which any member of the public can obtain any goods or services. Plaintiff, who is deaf, alleges that Newsday's website, which provides newsworthy articles and videos, is inaccessible to him, purportedly in violation of Title III of the American with Disabilities Act. More specifically, Plaintiff claims he attempted to watch two (2) videos called "Dumpling Craze Hits Long Island: Feed Me TV" and "High and Mighty: Feed Me TV" but was unable to do so because the videos did not have captions and he was unable to comprehend the audio portions of the videos. Based on not being able to watch these two (2) videos, Plaintiff asks for injunctive and declaratory relief, as well as damages.

The Court should dismiss this lawsuit for a number of reasons. On the most basic level, Newsday is not a "public accommodation" as that term is defined by Title III of the Americans with Disabilities Act ("ADA"). If Newsday is not a public accommodation, its website cannot, *per se,* be a "place of public accommodation." In addition, even if a news company like Newsday with no retail operations could somehow be construed as a public accommodation, Plaintiff's inability to view two (2) videos has not caused the concrete, particularized harm now required for standing under the Supreme Court's decision in *Spokeo v. Robbins*. Plaintiff has also failed to demonstrate the likelihood of imminent future harm

necessary to support injunctive relief. And, finally, Plaintiff failed to allege that he ever made a predicate request for an auxiliary aide before filing suit, as required by the ADA.

## RELEVANT FACTUAL ALLEGATIONS[1]

Plaintiff is a deaf resident of Queens County, New York. (*See* Compl. at ¶ 4.) Newsday is a private company that publishes a daily newspaper that primarily serves Nassau, Suffolk, and Queens Counties. (*See* Compl. at ¶¶ 21-22.) According to Plaintiff, Newsday, a news publication, is a place of public accommodation because it is allegedly a "place of exhibition and entertainment," a "place of recreation" as well as a "service establishment." (*Id.* at ¶ 48.) Newsday operates a website, www.newsday.com, on which there are two (2) videos called "Dumpling Craze Hits Long Island: Feed Me TV" and "High and Mighty: Feed Me TV." (*Id.* at ¶ 20.) These videos were not closed-captioned and, due to his deafness, Plaintiff was unable to comprehend the audio portions of the videos. (*See id.* at ¶¶ 7, 20.) The Complaint alleges Newsday violated Title III by allegedly failing to provide closed captioning as an auxiliary aid and service. (*See* Compl. at ¶¶ 51, 54.) Plaintiff accordingly filed suit under the ADA and various state and local access laws seeking relief, because, without being able to view the "Dumpling Craze Hits Long Island: Feed Me TV" and "High and Mighty: Feed Me TV" videos, he (and the purported class members) was denied the use and enjoyment of Newsday's website. (*See* Compl. at ¶¶ 16, 41.)

Plaintiff did not actually provide a link to the videos he sought to watch. The videos may be viewed here: https://www.newsday.com/lifestyle/restaurants/feed-me-tv/dumplings-episode-1.29870285 and https://www.newsday.com/lifestyle/restaurants/feed-me-

---

[1] Defendant does not concede to the accuracy of the allegations set forth in the Complaint. For purposes of this motion, however, Defendant accepts the allegations in the Complaint as true. See, e.g., *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (citation omitted).

tv. As reflected by the above links, the videos are episodes of a series called "Feed Me TV." The videos do not discuss any goods or services offered by Newsday. Notably, what Plaintiff did not share, however, is that the "Dumpling Craze Hits Long Island: Feed Me TV" and "High and Mighty: Feed Me TV" videos at the center of this lawsuit, are, in fact, available on YouTube. *See* https://www.youtube.com/watch?v=9L4S__S4ZOg and https://www.youtube.com/watch?v=CsLfT2sdabM&list=PLRDBIWNdL8Cb8Jw-o3qXUgnTQyFwtLmLh&index=4&t=0s. In fact, the entire series is available on YouTube with captioning. *See* https://www. youtube.com/playlist?list=PLRDBIWNdL8Cb8Jw-o3qXUgnTQyFwtLmLh. Thus, on its face, the allegation that Plaintiff is unable to view these videos, when he can view such videos on YouTube (with captioning through software used by YouTube), is faulty.

## ARGUMENT

### STANDARD OF REVIEW ON RULE 12(B)(1) & (6) MOTION TO DISMISS

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is substantively identical to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction on a 12(b)(1) motion." *Rodriquez v. Fed. Bureau of Prisons*, 2012. U.S. Dist. LEXIS 185412 at *18 (N.D.N.Y. Nov. 30, 2012) *citing S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008). Dismissal is proper for lack of subject matter jurisdiction when "the district court 'lacks the statutory or constitutional power to adjudicate it.'" *Rodriguez* at *18 *citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2003). The issue may be raised at any time by a party or the court *sua sponte*, and the court may consider material beyond the pleading. *Rodriguez* at *18 *citing J.S. ex rel N.S. v. Attica Central School*, 386 F.3d 107, 110 (2d Cir. 2004).

3

A motion made pursuant to Rule 12(b)(1) "may be either facial or fact-based." *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In a facial challenge, the challenge is "based solely on the allegations of the complaint and the exhibits attached to it." *Id*. at 56-57. If, conversely, the challenge is a result of evidence offered by the defendant, the plaintiff will be forced to "come forward with evidence . . . to controvert that presented by the defendant." *Id*. at 57. In such a case, plaintiff has the "burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 665, 638 (2d Cir. 2005).

In deciding a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889(JFB)(AKT), 2016 U.S. Dist. LEXIS 98076, at *9 (E.D.N.Y. July 27, 2016). The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court may "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to withstand a motion to dismiss. *Id*. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *MBIA Inc.*, 2014 U.S. Dist. LEXIS 97359, at *15.

Under *Iqbal*, a claim is not plausible on its face unless there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." 556 U.S. at 678. A plaintiff must allege sufficient facts to demonstrate there is "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

As directed by the U.S. Supreme Court, first, the District Court should identify and disregard allegations that are merely legal conclusions or recitals of the elements of a cause of action. *Id*. at 679. A court accepts only allegations of fact, not legal conclusions to support a claim. While legal conclusions may provide the framework for a complaint, they must be supported by factual allegations. *Id*. The second step is identifying "well pleaded factual allegations." *Id*. Only these are assumed to be true for purposes of the motion. *Id*. Having separated legal conclusions from the factual allegations, the Court must determine whether the factual allegations establish a claim that is "plausible on its face," i.e., whether the facts permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

## POINT I

### PLAINTIFF LACKS STANDING AND THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE HE CANNOT DEMONSTRATE HARM

For purposes of constitutional standing "[a]n injury in fact must [not merely be particularized, it must] also be 'concrete.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Thus, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Rather, "Article III standing requires a concrete injury *even in the context of a statutory violation*. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In *Spokeo*, because the defendant engaged in a technical statutory violation which did not actually

5

result in concrete harm, the Supreme Court found that the plaintiff had not met the standard for Article III standing. *See also Groshek v. Great Lakes Higher Education Corp.,* No. 16-3711 (7th Cir. Aug. 1, 2017) (relying on *Spokeo* and affirming dismissal of claim based on statutory violation of FCRA without "facts demonstrating a real, concrete appreciable risk of harm"); *Feltzin v. Triangle Props., #1, LLC,* 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y. Dec. 15, 2016) (relying on *Spokeo* to show that it is not enough for a plaintiff to allege a violation of the ADA; the plaintiff must also allege facts sufficient to establish an injury because of those violations).

Here, Plaintiff sustained no injury in fact because he was never denied access to any of Newsday's goods and services. At most, Plaintiff was denied access to two (2) videos on Newsday's website because they did not contain captioning, but were available with captioning on YouTube. *Spokeo* squarely applies to bar Plaintiff from bringing such a claim.

As Plaintiff has alleged mere technical ADAAG violations (if at all) without alleging that he was actually harmed in any concrete way, Plaintiff lacks the concrete harm required by *Spokeo* and the Complaint should be dismissed.[2]

## POINT II

**NEWSDAY IS NOT A PUBLIC ACCOMMODATION COVERED BY TITLE III OF THE ADA**

The Complaint's conclusory allegation that Newsday is a place of public accommodation is insufficient to plead that Newsday is a Title III covered entity. To state a claim under Title III, the plaintiff must allege "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that

---

[2] This is especially true when considering, as noted above, that Plaintiff is able to view the videos on YouTube with captions and both videos identified in the Complaint are available on YouTube.

defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). Plaintiff fails to sufficiently allege that Newsday is a "place of public accommodation" – an indispensable element of Plaintiff's cause of action - in order to plead a Title III discrimination claim under Title III.

Title III of the ADA specifically addresses discrimination by owners, lessors, and operators of public accommodations. It provides as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Section 12181 sets forth the following limited list of private entities that are considered "public accommodations" for purposes of Title III:

> (A) an inn, hotel, motel, or other place of lodging . . .
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;

> (H) a museum, library, gallery, or other place of public display or collection;
>
> (I) a park, zoo, amusement park, or other place of recreation;
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). Federal regulations explicitly confirm that the list of 12 categories is exhaustive. 28 CFR Appendix C to Part 36 ("In order to be a place of public accommodation, a facility . . . must fall within one of these 12 categories.") The list is clear in including only places open to *the public* and providing "goods or services" to *the public* (hence the term "public accommodation"). Despite the exhaustive nature of the list, it does not include newspaper companies, like Newsday, which sell daily newspapers to direct customers via delivery service and retail establishments who in turn offer those product to the public.

According to Plaintiff, Newsday, a company that publishes a daily newspaper and maintains a website, is a place of public accommodation because it is allegedly a "place of exhibition and entertainment" and a "place of recreation" as well as a "service establishment." Compl. ¶ 48. However, this cannot be the case for reasons which are obvious.

The statute itself gives examples of these forms of public accommodation (examples flatly ignored by Plaintiff), which makes it glaringly obvious Newsday cannot fit into any category listed by Plaintiff. For example, a "place of exhibition and entertainment" includes "a motion picture house, theater, concert hall, [or] stadium." 42 U.S.C. § 12181(7)(C). Clearly, the statute is referring to *entertainment* facilities. Newsday is none of these things.

Similarly, "place of recreation" is statutorily defined to include a "park, zoo, amusement park." 42 U.S.C. § 12181(7)(I). Again, Newsday, a newspaper company, cannot even remotely be described as providing to the public a "place of recreation" such as a park or zoo. Similarly, the Complaint does not allege that Newsday provides recreational services.

Finally, a "service establishment" is statutorily defined to include those types of facilities which provide services to the public, such as a "laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital." 42 U.S.C. § 12181(7)(F). Under this statutory definition, Newsday *cannot* be a place of public accommodation. *See* 28 CFR Appendix C to Part 36.

Newsday does not provide its goods or services to consumers at any Newsday run location. In addition, Plaintiff merely alleges he was unable to access the audio portion of two (2) videos on Newsday's website. Even assuming that the website is a place of public accommodation under Title III, this allegation does not amount to a denial of Newsday's goods and services which is the provision of the news. Accordingly, the website cannot possibly contain a barrier – here two (2) videos about trying different foods – to obtaining Newsday's goods and services. Plaintiff can obtain those goods and services by reading Newsday's newspapers and websites articles.

In short, Newsday is not open to the public, and is not included in the limited definition of Title III itself, and thus is not a place of public accommodation under Title III of the ADA simply because it also operates a website. The Complaint should be dismissed.

## POINT III

### PLAINTIFF'S ALLEGED INABILITY TO VIEW TWO VIDEOS ON NEWSDAY'S WEBSITE IS NOT A BARRIER COVERED BY THE ADA

The ADA and its regulations require only that a disabled individual has equal access to goods and services of places of public accommodation. *See* 42 U.S.C. § 12182(a). Indeed, the Complaint does not allege Plaintiff ever attempted to obtain goods or services from Newsday or its website, rather he merely sought to access to two (2) videos provided on Newsday's website. Compl. at ¶¶ 7, 20. This is particularly true when one considers that YouTube provides captioning software that Plaintiff can access, together with the undisputable fact that the two (2) videos called "Dumpling Craze Hits Long Island: Feed Me TV" and "High and Mighty: Feed Me TV" are available to Plaintiff on YouTube.

In sum, the Complaint should be dismissed because Plaintiff did not encounter a legitimate barrier to access captioning for the two (2) videos because he had alternative ways of watching the videos with captions.

## POINT IV

### TO THE EXTENT THE COMPLAINT ALLEGES A TITLE III VIOLATION BASED ON FAILURE TO PROVIDE AUXILIARY AIDS AND SERVICES, PLAINTIFF NEVER MADE A REQUEST FOR SUCH SERVICES

Even if Plaintiff's Title III could withstand the bases establishing above warranting dismissal of Plaintiff's Title III claim, Plaintiff's ADA claim is stilled doomed because the Complaint fails to allege Plaintiff requested that Newsday provide him any auxiliary aids and services or knew he needed such aids and services – a basic, indispensable prerequisite to Plaintiff alleging a Title III claim in this instance. Plaintiff basis his Title III claim on Title

III's statutory requirement that covered entities have an obligation to provide auxiliary aids and service to hearing impaired individuals to enable effective communication. Compl. at ¶¶ 51, 54. The Complaint alleges Newsday violated Title III by allegedly failing to provide closed captioning as an auxiliary aid and service. Compl. at ¶¶ 49, 51, 54.

Courts considering the claims concerning the alleged failure to provide auxiliary aids and services have clearly held that the obligation to provide an auxiliary aid is only triggered upon a request for such aids and services by a disabled individual. *See, e.g.*, *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) ("Both the ADA and the Rehabilitation Act are intentionally broad in scope, but they do not require institutions to provide all requested auxiliary aids and services. Instead, each statute requires the responsible parties to provide 'necessary' auxiliary aids and services to individuals with disabilities"); *see also Tauscher v. Phoenix Bd. of Realtors, Inc.*, No. CV-15-00125-PHX-SPL, 2017 U.S. Dist. LEXIS 161940, at **7-8 (D. Ariz. Sept. 29, 2017) ("Defendant met [its] obligation under the ADA when it engaged in a dialogue with Plaintiff about his request for an ASL interpreter so that Plaintiff could attend Defendant's classes, but was precluded from further meeting its obligations under the ADA when Plaintiff refused to discuss alternative auxiliary aids"); *Godbey v. Iredell Mem'l Hosp., Inc.*, No. 5:12-cv-00004-RLV-DSC, 2013 U.S. Dist. LEXIS 117129, at *23 (W.D.N.C. Aug. 19, 2013) ("[I]n evaluating Defendant's efforts to ensure effective communication, qualifying defendants are not required as a matter of course to provide ASL interpreters, and such defendants are not required to guess a Plaintiff's need for reasonable accommodations."); *United States v. Harcourt Brace Legal & Prof'l Publ'n, Inc.*, No. 94CV3295, 1994 U.S. Dist. LEXIS 22007, **5-7 (N.D. Ill. June 23, 1994) (requiring the "Defendant [to] provide appropriate auxiliary aids and services to students with disabilities who request the provision thereof subject to [certain, enumerated

conditions]"); *Burkhart v. Washington Metropolitan Area Transit Authority*, 324 U.S. App. D.C. 241, 112 F.3d 1207, 1213 (D.C. Ct. App. 1997) ("Nothing in the ADA itself or its implementing regulations dictates that a disabled individual must be provided with the type of auxiliary aid or service he requests unless it would alter the service provided or create an unreasonable burden or expense").

Similarly, the DOJ's Technical Assistance Manual encourages consultation between public accommodations and disabled individuals to determine which auxiliary aids or services will enable effective communication. *See Dep't of Justice: Americans with Disabilities Act ADA Title III Technical Assistance Manual*, § III-4.3100, https://www.ada.gov/taman3.html (last visited February 20, 2020) ("Public accommodations should consult with individuals with disabilities wherever possible to determine what type of auxiliary aid is needed to ensure effective communication. . . . While consultation is strongly encouraged, the ultimate decisions as to what measures to take to ensure effective communication rests in the hands of the public accommodation, provided that the method chosen results in effective communication.") And, in many of the DOJ's "examples of auxiliary aids and services," a public accommodation's obligation to actually *provide* the aid or service is only triggered upon a disabled individual's request. *See id*. at §§ III-4.3420-4.3500 ("[Telecommunication devices for the deaf] must be made available on request to hospital patients or hotel guests where in-room phone service is provided. . . . Hospitals that provide televisions for use by patients, and hotels, motels, and other places of lodging that provide televisions in five or more guest rooms, must provide closed caption decoder service upon request")(emphasis supplied).

In a guidance document specific to Title II of the ADA (which only applies to public entities), the DOJ stated "[g]enerally, the requirement to provide an auxiliary aid or

12

service is triggered when a person with a disability requests it." *ADA Best Practices Tool Kit For State And Local Governments: General Effective Communication Requirements Under Title II of the ADA*, Ch. A(1), https://www.ada.gov/pcatoolkit/chap3toolkit.htm (last visited February 20, 2020). Although this guidance document applies to Title II rather than Title III, the requirement to request auxiliary aids and services still equally applies under Title III because the obligation to provide such services is the same under both Titles of the ADA and both are enforced by the DOJ.

Because Plaintiff has not alleged he requested auxiliary aids and services from Newsday, let alone that they were denied, his claim that Newsday violated Title III by failing to provide auxiliary aids and services must be dismissed as a matter of law.

## POINT V

### THE NEW YORK STATE HUMAN RIGHTS LAW CLAIM AND THE NEW YORK STATE CIVIL RIGHTS LAW CLAIM SHOULD BE DISMISSED

The New York State Human Rights Law ("NYSHRL") is comprised of the New York Executive Law § 292 *et seq.* (which provides the substance of the law), and the New York Civil Rights Law § 40 *et seq.* (which provides of penalties). *See de la Rosa v. 597 Broadway Development Corp.*, 2015 WL 7351540 at *17, n. 16 (S.D.N.Y. Aug. 4, 2015) (using the collective term "NYSHRL" to refer to the statutes); *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) ("Facts sufficient to sustain a cause under New York Executive Law section 296 will support a cause of action under section 40-c of the Civil Rights Law."). In general, disability discrimination claims under the NYSHRL rise or fall in tandem with discrimination claims brought pursuant to the federal ADA. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 186 n. 3 (2d Cir. 2006). The NYSHRL reads:

13

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, resort or amusement, because of the . . . disability . . . of any person, direct or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof[.]

N.Y. Exec. Law §296(2)(a).

The law defines the term "place of public accommodation, resort or amusement" as including "wholesale and retail stores and establishments dealing with goods or services of any kid." N.Y. Exec. Law § 292 (9). A "discriminatory practice" includes

> a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations[, or] a refusal to take such steps as may be necessary to ensure *that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services*[.]

N.Y. Exec. Law § 296(2)(c)(i)-(ii)(emphasis added). "Auxiliary aids and services" include qualified readers, taped texts or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar devices and actions." N.Y. Exec. Law § 296(2)(d)(ii)(B)-(D).

The matter of whether a website itself was a "place of public accommodation" was first ruled on in the Second Circuit in *Andrews v. Blick Art Materials LLC*, 268 F. Supp. 3d 381 (E.D.N.Y 2017). The court in *Blick Art* noted that the concept of public accommodation has two concepts, "[1] the idea of public accommodation *in the broad sense of providing conveniences and services to the public*, and [2] the idea of *place*." *Id.* at 399 (*citing United States v. Power Squadrons v. State Human Rights Appeal Bd.*, 452 N.E.2d 119, 1203 (N.Y.

1983) (emphasis added)). As such, NYSHRL claims should be interpreted consistently with ADA claims. Similar to Plaintiff's ADA claims, Plaintiff has been unable to sufficiently meet the first prong required under *Blick Art*. Instead, Plaintiff has done nothing but alleges that the failure to have captions on two (2) videos (when both are available on YouTube with captions) amounts to a denial of Newsday's goods and services to Plaintiff. Because this claim is insufficiently pled, the claim should be dismissed.

## POINT VI

### THE NEW YORK CITY HUMAN RIGHTS LAW CLAIM SHOULD BE DISMISSED

The New York City Human Rights Law ("NYCHRL") is embodied in section 8-107 of the New York City Administrative Code. The law makes it

> an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation [b]ecause of any person's actual or perceived . . . disability . . . directly or indirectly [t]or effuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation.

N.Y.C. Admin. Code § 8-107(4)(a). The NYCHRL is treated as a "one-way ratchet" whereby interpretations of federal and state civil rights laws are viewed as a "*floor* below which the City's Human Rights law cannot fall." *Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009 (emphasis in original) (quoting the Local Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)).

In the instant case, the NYCHRL covers discrimination in "accommodations, advantages, services, facilities or privileges or the place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4)(a). As in the case of the ADA claims and the NYSHRL claims

against Defendant, this too should be dismissed. Plaintiff has not established that Defendant is a place or provider of public accommodation.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and grant such further relief as this Court deems just and proper.

Dated: February 28, 2020
      White Plains, New York

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By: */s/ Michelle E. Phillips*
Michelle E. Phillips

*/s/ Joseph J. DiPalma*
Joseph J. DiPalma

*Attorneys for the Defendant Newsday LLC*

4843-8126-0981, v. 2